People of the state of Illinois Petitioner-Appellee, the Austin meeting responding appellant. Are you here on behalf of the responding appellant, Mr. Kerry B. Getsch? Are you here on behalf of the Petitioner-Appellee, Ms. Mary Beth Burns? Thank you. Mr. Getsch, you may proceed. Good morning, Your Honors. My name is Kerry Getsch. I represent the appellant in this case, Austin B. I wanted to start out by saying that Austin has been released from focus house. I thought that was pertinent information, given the state's securing of evidence. But I don't think it changes the underlying issue as to whether he was in custody for the time that he resided there. Is he still subject to the jurisdiction of the court where he could potentially go to D.O.C.? Yes, he's still under probation until 2020, I believe, is the end of his four-year term. So if something happened now where he was in focus house because of a criminal sexual abuse charge, correct? Correct. And probation determined and the court determined that he shouldn't go back home, correct? Correct. There was a younger sibling. What they call a sheltered care hearing. Right. Wasn't there a younger sibling at home or something? I believe that is the reason why. The abuse wasn't towards the younger sibling, but I believe that was why they felt he shouldn't be... Potential danger of the house. Correct. So if something happened that didn't rise to the level of a petition to revoke probation, where it was pretty clear he couldn't live in the house anymore, I mean, really, the court's hands would be tied, correct? As far as? As far as being able to send him to a group home or to foster care or anywhere else that would be considered custody in your argument. Are you talking initially or now? Now. We're talking right now. The court's hands would be tied as to where they could send him. Right. I'm sorry. I'm trying to clarify. Sure. Absolutely. What I'm saying is if he's done the four-year, he can't do anymore. Right. Okay. So he's still on probation. Correct. And if he violates the probation, or I'm sorry, if he does, if something happens that doesn't result in a violation, I mean, if a violation comes and he's resentenced, then, you know, he could be resentenced. But, well, even then, he might get credit for that. So I think what you're trying to say is if he does something or he is in a position where he's doing something contrary to the conditions of his probation. If it becomes apparent that because of this younger sibling he can't live in the home anymore, the court's hands are tied as to what they can do with him, correct? Right. He could no longer be sent to a juvenile justice facility because he's already served more than a year in custody. Correct. So he couldn't go to DOC for sure. No. I mean, assuming his violation doesn't rise to another crime. Right. Of course. But, yes, because he's been in custody all of his time, nearly four years, they couldn't sentence him on the underlying misdemeanor to more time in custody. Which would include, my question gets to which would include foster care, another group home, a residential placement. I mean, I'm not talking about detention or DOC. I'm just talking about another place where he could live short of detention. I don't think that the criminal court can force him to live somewhere. But certainly DCFS or someone from a civil side of things could find that he was endangering his sibling or he was, you know, in a situation that was an unhealthy living situation. And so that kind of gets to the heart of this argument. What is considered custody? Right. So this is a criminal matter. And, you know, I'm not obviously familiar enough with the civil side of child and family services to know exactly what they do. But they certainly have to have procedures to deal with children that can't be. I mean, sex offender children exist and they have to live somewhere. And it falls outside the realm of juvenile justices. What is that? So that's no different than the case that we have here. A gentleman who we put in the focus house because he couldn't live at home because of a younger sibling and it was a risk. So when you put him in the focus house because you're going to take him out of his living conditions because he has to for the safety of the younger siblings, how is that custody? I mean, would it be custody now? Now he not violates, but they look at the conditions of his probation and say, well, you really shouldn't be in the house with this girl. We're going to put you in, you know, group home or you can go live in this group home where you could go to a foster home. That's not custody, right? Well, again, if the criminal court is forcing him to live in a state run facility, then yes, that is. But if the civil side of things decides, I think the answer to your question is his requirement to live at focus house was part of his probation. And that's what transforms it into custody for purposes of sentencing credit versus whether placement is appropriate under a variety of other situations. I see what you're saying. OK, so it's not necessarily that, you know, OK, he he should be released. And, you know, BCFS can't touch him or the state has no interaction with him. It's just that he should be no longer considered under the criminal side of things to be laboring under criminals. Let me ask you a couple of questions on this point. You're not saying that all residential and foster placements would in and of themselves constitute custodial arrangements for purposes of the sentencing credit, are you? Not all of them, no. So it turns on the nature of this, the confinement, if you were the placement, correct? Correct. But so initially, when something like this happened in this case, they held what was called a shelter care hearing. And, you know, there's a section of the Juvenile Justice Act that provides for that. And the parties agreed at that time that he should live at focus house. But then once he actually pleads to a misdemeanor where the sentence can only be a year and then the focus house custody is courted to continue pretty much indefinitely. By who? By the juvenile justice judge. In the criminal case? In the criminal case, correct. In the juvenile court. In the juvenile court. And I think one of the things that would be helpful if this court clears up that this is custody is that the civil side of things will maybe be a little more proactive in saying, well, we need to figure out what to do here because we can't just detain him indefinitely under the terms of a complaint. Right now, he could theoretically have served basically five years. I mean, he has gotten out. Right, up until he's 21. He's under the jurisdiction of the court potentially until he's 21. Correct. So he could have theoretically been in focus house until he's 21. Right. Without ever having a civil determination that he should be placed somewhere else. This shelter care here, I mean, you talk about that. I mean, really, that doesn't matter. He would get credit for that. Under your argument, he gets credit for that time. If he comes into the system, they place him there pretrial. Right. And he'd get credit for that under your argument, correct? Correct. Okay. Let me ask you. You've cited Beecham. Okay. Beecham was an adult case. It involved a different program. So do we need to consider Beecham to resolve this? Can't we just look at the statute that was referenced in Montrell? Right. We don't have to. I mean, Beecham is helpful in that it shows that the legal duty to submit is sufficient. You don't have to be physically restrained. Right. To constitute custody. Right. And then the defendant in Beecham was living at home, and he was still in custody because of this day reporting program requirement. Right. I mean, so because even if you're living at home, you can be in custody. And certainly if you're forced to live outside of the home and under the restrictions imposed by the juvenile court, then. Montrell said Beecham didn't apply to this juvenile case. Well, Montrell cited Beecham. No, Montrell said that the trouble with Beecham and Smith is that the respondent is not an adult participant in a day reporting program. So rather, he's a minor alleged to be delinquent. And that's an important distinction because his entitlement to credit depends on the statutes, not on any of the stuff in Beecham and Smith. So, I mean, really, Montrell did not rely on Beecham at all. He distinguished Beecham. Well, I guess my impression was that Montrell thought that citing Beecham for the idea that custody is a legal duty to submit, and that applies whether. Well, you know what's funny about that quote from Beecham that keeps flying around in contexts that aren't anywhere near similar to Beecham, is that custody means the legal duty to submit to custody. Right. Is that a little circular to you? I mean, when you define a term by using the same term, I always have a little trouble with that. Well, it's a legal duty to submit to state authority, which could be. But that's probation. I mean, you have a legal duty to submit to probation when you're on probation. What's the difference? And not everyone on probation is in custody. Well, no, but physically, are they required to be at a certain spot physically? Are they restrained physically? I think that's sort of what they mean. I mean, when you have an idea of custody, there's physical restrictions on where you can be at time, place, and manner restrictions. I thought the definition of Beecham was it doesn't matter about your physical restrictions. Well, I think the idea that he had to be at the day reporting program, he had to report to the sheriff. He had to physically, you know, occupy a certain space during the day. I think that factored into their analysis. I mean, yes, you don't have to be physically locked in a room, but your actions are limited by the requirements of the sheriff in that case. Can we get back to the statute which was cited in Montauk? Because I think this case turns on that. Yeah. You tacitly acknowledge, and I think correctly, not every single placement would automatically constitute a custodial arrangement for purposes of sentencing credit. But looking at the statute, 705 LCS 405 slash 510511 says, for purposes of sentencing credit, non-secure custody means confinement where the minor is not physically restricted by being handcuffed in a cell, et cetera, et cetera. So, you know, it doesn't have to be physical restraint to constitute custody. Statute goes on to say non-secure custody may include, doesn't say has to, may include, but is not limited to electronic home monitoring, foster home placement, group home placement, or any physical restriction of activity by facility staff. Correct. So I guess the question comes down to what is it about this particular placement and what is required to do and not do here in this focus house that constitutes a custodial arrangement? I see a couple of things here, but you tell me what it is about this particular placement. Well, I mean, first and foremost, he's not free to leave. He is required to follow the rules of focus house, obey the staff. If he doesn't, he can be violated for probation. So, I mean, if you- Can he be charged with escape? Can he be charged with escape? Well, there was some question about that in the trial court. And the state's attorney said, well, I don't think we would charge him with escape, but we definitely can't charge him with violating probation. A warrant would issue for his arrest. And the judge specifically said a warrant would issue if he disobeyed the rules of focus house and or left. And so, you know, I don't want to, like, seem like I was relying on Beacham too much. I do think the language in there is helpful, but this is a good opportunity to point out that non-secure custody in juvenile situations counts as custody, and you get credit for that. It's different than an adult. It's different than an adult. So, you know, while I'm trying to support my use of Beacham, at the same time, yes, the juvenile act is more open to credit, specifically for non-secure custody. Why does indicia of custody matter? I mean, you agree with Justice Hudson when he asked you whether you have to look at these indicia of custody. Like Christopher P. looked at all these different bullet points of indicia of custody. You in your brief argued the indicia of custody here. What difference does it make under the statute? It's a group home placement. It's non-secure custody. Why does it matter? Well, it matters because he deserves credit for non-secure custody. No, no, no. I understand why we're here. I understand why that matters. No, why does it matter whether we have to look at indicia of custody or not? If it's a group home placement, we don't have to look at indicia of custody. It's already in the statute. They said group home placement. Right. That's one of the things of non-secure custody. Some of the argument that I believe the state will say is that this isn't a traditional group home. I mean, they're trying to make distinctions about, you know, the type of living arrangements. But, yes, our argument is it doesn't matter. I mean, this is non-secure custody for, and I think that was part of the problem with the judge's ruling, is the judge relied a lot on whether it was secure or not, when non-secure custody for purposes of the juvenile is the same. The judge never got into that. That was the basis of his ruling. No, but you've got to give the judge some leeway here because nobody argued Montrell to this judge. Nobody argued this statute to the judge. Everybody was arguing Christopher's plea. Everybody was arguing Beecham. Right. They weren't arguing the statute. Right. So, I mean, you know, the judges did. And it's the same thing with the pre-Montrell cases. You know, there's a number of Rule 23s that ruled the same way this trial judge did on the 4th District, and they were left with the same thing, was indicia of custody. Nobody argued the statute to those judges. Right. So, are we going to move it? No. Thank you. You'll have time for rebuttal argument, Mr. Judge. Ms. Burns. You may proceed. Thank you. Good morning, Your Honor. May it please the Court, my name is Marietta Burns, and I represent the people of the state of Illinois. In our brief, our position is that where the relief he sought was released, his release renders the case moot. As counsel pointed out, the minor was released to his grandmother's custody and guardianship on December 20th. You kind of almost, not concede, but come right up to the edge of conceding that this is the public interest exception by citing Howley in Page 4 of your brief, do you know that? I acknowledge that the Respondent and this Court may wish to consider it under that. I mean, Christopher P. considered it under that, Darius L. considered it under that. Right. Howley considered it under that. I mean, I can't stand here and say nobody ever considers things under that. This is certainly something that can come up again in the future, is it not? Right. Right. We appreciate your arguments, but I would suggest you not focus too much on the mootness doctrine. We know the elements. But darn, I've written pages on it. I understand, but I think it's going to turn on the custodial issue, not the mootness. No, I agree. And when counsel and I were speaking before the argument, I told them this is about the fourth case I've argued this year where it seems to me that the answer is less judicial than statutory. Because you have a situation where you had a 12-year-old who alleged to commit initially criminal sexual assault, aggravated criminal sexual abuse, and sexual abuse, who ultimately pled to the misdemeanor. But during the course of the investigation, they determined not only abuse as to the neighbor boy who was alleged here, but a couple of other neighbors. There has to be a place where a child can be placed safely for his own safety and for the safety of the neighborhood. And there also here was a younger sibling. Well, two things come to mind with that. One is if you're the prosecutor, you don't plead him to a misdemeanor. You don't offer the misdemeanor. You say we're holding out for a felony because if we need to place this kid somewhere, we need it for three years or five years or seven years or whatever the case may be. And then the second thing is counsel's argument that there are other alternative means to get this kid out of the house, correct? I think probably that's true. I don't know why decisions were made at the time in the prosecutor's office and the court. And apparently, again, in talking about this case to various other lawyers, nobody seemed to understand why there weren't also parallel abuse and neglect proceedings. But when I talked to the state's attorney's office, they indicated the record we had was complete. There were not parallel proceedings that were not part of the record. I'm sorry, you had a question, Your Honor? No, no, no, no. Okay. Your Honor, let me ask you the overarching question I think this case turns on. You're familiar with Montrell, correct, the Montrell decision? The court found the juvenile was entitled to credit for time spent on electronic home monitoring because the section in the Juvenile Court Act includes the definition of non-secure custody. The section we're referring to also includes confinement where the minor is not physically restricted and expressly references group home placement. So why wouldn't the statute, if you started to allude to these things are controlled by statute, why wouldn't that control the placement of focus house? The statute allows for credit for placement, so why doesn't it turn on the statute? And again, to the extent that the statute had language which says that custody is not limited to an arraignment, not limited to confinement and includes not limited by physical restriction, I honestly do not know the answer to that. The trial court relied on distinctions which trial courts typically draw, but those distinctions were in fact based on the nature of the placement rather than the statute. I think trial court got into things which ostensibly would come to mind. We're not criticizing him. Something about the doors are not locked, that's true. But I think he sort of got off on the point of physical restraint rather than the statute in what has been determined to be non-custodial, physical non-custody. And I guess to the extent that this court believes that the statute in fact would limit the nature of the placement as it occurred to be custody and that therefore he would be subject to release beyond that. And again, to the extent that this sentence was actually probation rather than this placement was like a tenet of the probation. Assuming that the minor is correct and this was custody, does that mean that he is released to a home, to a guardianship beyond? Because again, the mother was not appropriate because there was a younger sibling in the home. Well, that's why you filed a DCFS case. I'm sorry? That's why you filed an accompanying neglect and abuse case. Which wasn't done here, correct? I think that's what should have been done, but I can't tell the State's Attorney's Office what to do. Right, right. But I'm curious as to an actual resolution of the substance of the case, assuming this Court is not finding it moot. Assuming that, what is the guidance this Court would give to State's Attorney's Offices that are in similar situations? And I guess part of this also is, when I was doing some research on Focus House itself last week, preparing for the argument, apparently there are contracts. The part of Focus House that the minor was in is limited to sexual offenders. And they have contracts with other entities outside of Oak County, but apparently never have more than ten boys at a time. I guess it's like, can these only be then, if the statute means what the statute says, this can only be part of an actual sentence rather than a tenant of probation? Or is it something that could be part of an abuse and neglect proceeding as an appropriate placement facility? And I'm honestly not sure. I apologize because I should be arguing positions to this Court instead of asking this Court to take it through. Well, you raise a good question, as well as the points that were made from the bench. There could be ostensibly some gaps, perhaps, in what happens in real life if the situation occurs. What are the implications if you follow the statute literally? But notwithstanding that, we're called upon to rule on the specific issue in the statute in front of us. Perhaps there's a gap in the law and the legislature should step in and address this dilemma that admittedly could result if something like this happens, or as Justice Shostak says, maybe there should have been a pending abuse and neglect case. But based on what it is now, we're called upon to decide, does this particular placement qualify for a sentencing credit? I mean, I don't think we can ignore the statute because there's some other consequences. I think that's very true. And to the extent that this Court wants to encourage the legislature to perhaps reevaluate some of these things, even if we lose them, I would ask this Court to publish. And I rarely invite publication of losers. But the fact is, again, this is at least the fourth case I've had this year, which requires, I think, more legitimately a legislative response than a judicial one. What would your suggestion be for a legislative response? That probation can include residential treatment where needed for specific individuals in appropriate facilities. Where they do not get credit for it? And they get sentencing credit for it. They'd be part of probation. Which makes sense in light of the custody and guardianship provisions of the Probation Act in juvenile court. I mean, a court could place a minor under the custody and guardianship of probation up to their 21st birthday. But now they can't place, according to this argument, they can't place that person outside the home for over the length of the sentence. Or for outside where he wants to be. And again, here where the home clearly was not going to be proper, but the grandmother was in a situation to assume guardianship and custody of him. And it may well be that's part of where the abuse and neglect proceeding would be necessary, if in fact a home placement is not going to be appropriate. Again, I apologize for being less than helpful to this Court today. Well, you've sort of torn between your advocacy part of your role and your intellectual. Well, I mean, you're prepared to argue, as they did below, the differences between Christopher P. and this setting. I mean, I understand that. That Christopher P. was much more indicia of the custody than this group home. Absolutely. But when we take a step back, and this was all before Montrell S. came up and basically said custody is custody and pointed out that the statute said non-secure custody means a group home. And we're left with the statute. And I think there is a real problem there when you talk about someone charged with a misdemeanor who's under the guardianship of probation. They can't place the kid somewhere, even though they're the kid's guardian. Exactly. And it is. It's a very – when I was working on the case, I'm like, this is both frustrating and disappointing. And, again, when I'm doing the research on Focus House, the area that he was placed in typically runs between 3 and 8 or 3 and 10. Boys never had more than 10. And apparently, from the trial court's comments, it is considered to be a decent program. And because they have contracts with other agencies, I assume that they're doing decent work. But to the extent that it's considered custody and someone who continues to need intervention can only be held for the length of the sentence, which cannot be more than 364 days, I do not know what the actual answer to that is. Well, you suggested the legislature could step in, could they not? Again, I apologize to this Court for suggesting that perhaps this Court doesn't necessarily have a good answer other than inviting the legislature to reconsider how it views some of these things. Okay. Thank you very much. Thank you, Ms. Booth. Mr. Gatch, you want to argue? I have a question. Yes. Say, for instance, that there was a neglect and abuse case running at the same time as the juvenile criminal case. Yes. And in the neglect and abuse case, somebody filed a risk of harm with respect to the sister and said this young man needs to be taken out of the house, we're going to place him in this facility. What are the chances that the lawyer representing the child in the criminal proceeding, if it's not in the Oval Account, it's probably going to be the same lawyer, what are the chances that they're not going to say, hey, he should get credit for time served because that's custody? Well. Isn't the same issue going to arise? I don't think so because that's under the civil procedure for removing a child from a home. And so this is, I mean, a condition of probation is necessarily a form of punishment. And so it's not really a distinction without a difference. And I think that's what makes this case sort of important from a public policy perspective is, so Oval Account is operating under the assumption that we can handle all of this with just the juvenile system, we can detain him indefinitely even if it's just a misdemeanor that he pleads to, and we don't have to worry about maybe dealing with it from a civil aspect. But if there hadn't been a sister in the home, there's zero reason he would have had to have actually been removed from the home. He could have still attended counseling at Focus House, but he wouldn't have been in custody at Focus House. So there's a variety of scenarios that could come up, but I think it should be made clear to the juvenile justice system, at least as far as Oval Accounting in this situation, that you can't just detain a juvenile under the rubric of the juvenile justice system indefinitely, which is sort of what occurred here. Do you have any other questions? No, I don't. Thank you. Thank you, Mr. Gush. We thank the attorneys for their arguments. The case will be taken under advisement and the decision rendered in due course.